Chief Judge Fuld.
This case is the first to reach our court in which a strong argument is made that some aspect of social welfare legislation conflicts with traditional concepts of civil liberties. (See, generally, Jones, The Rule of Law and the Welfare State, 58 Col. L. Rev. 143; Reich, Individual Rights and Social Welfare: The Emerging Legal Issues, 74 Yale L. J. 1245; Note, 67 Col. L. Rev. 84.) More particularly, we are called upon to consider whether a welfare recipient may be imprisoned for his refusal to accept available employment.
It is a basic tenet of the Social Welfare Law that “ No assistance or care shall be given to an employable person who has * * * refused to accept a position for which he is fitted and which he is able to accept ” (Social Welfare Law, § 131, subd. 4; see 18 NYCRR 352.6, 385.4, 385.7). However, the termination of *174 public assistance in such a situation may not always be desirable, especially if the welfare payments were being provided primarily for the benefit of the recipient’s dependents. In an effort to avoid visiting the sins of the parent on the heads of his children, the State has taken the position here that it is authorized to prosecute a father for his unjustified refusal to work in lieu of depriving his dependents of welfare assistance.
In the Spring of 1966, the defendant Pickett was unemployed and was a recipient of Temporary Aid to Dependent Children, a form of welfare assistance provided for the benefit of minors whose “ parents are unemployed ” (Social Welfare Law, § 349, subd. B, par. 1-a; see IT. S. Code, tit. 42, § 607). Although he had looked for work, he had not actually had a job since the Summer of 1964, just before he was married, and, in the interim, he was trained at public expense, as provided for by the Social Welfare Law (§ 350-b), in a landscape gardening school. On April 18,1966, the New York State Employment Service referred him to a job as a “ landscape laborer ” at $1:50 an hour, 25 cents an hour above the minimum wage then required by law (Labor Law, § 652, subd. 1, par. [a]). On prior occasions when he had been referred to a job by the State Employment Service, the defendant had sought employment at the places where work was said to be available. On this occasion, however, he said that ‘[1] it wasn’t enough money” and that he ‘ ‘ wanted to look on his own ”. It was his testimony at the trial that he told the employment official he desired to investigate the possibility of working for one Carter in a construction job and he asked that his referral to a landscaping firm be ‘ ‘ put * * * off a week ’ ’. He was told to return a week later, and a notation to that effect was made on his employment referral form.
When the Welfare Department learned of the incident, the defendant’s welfare assistance was cut off, although payment of benefits to his wife and children was thereafter resumed. At any rate, on the same day on which the payments were stopped, an official of the Welfare Department went to the City Court of Niagara Falls and, with the help of the clerk of the court, instituted criminal proceedings against the defendant for violating section 145 of the Social Welfare Law—a provision which makes it a misdemeanor to commit ‘ ‘ any wilful act designed to interfere with the proper administration of public assistance and *175 care In somewhat greater detail, the pertinent part of the section reads as follows:
“ Any person who by means of a false statement or representation, or by deliberate concealment of any material fact, or by impersonation or other fraudulent device, obtains or attempts to obtain, or aids or abets any person to obtain public assistance or care to which he is not entitled, or does any wilful act designed to interfere with the proper administration of public assistance and care, shall be guilty of a misdemeanor
The defendant was arrested but was released pending trial. He immediately went' back to the State Employment Office and accepted the same kind of job, landscaping, that he had previously turned down.
He was found guilty, after trial, of violating section 145 and sentenced to 30 days in jail for his “ refusal * * * to go to work” and, on appeal, the Niagara County Court affirmed the judgment of conviction.
It is not clear from the legislative history of section 145 exactly what was meant by the proscription against ‘ ‘ any wilful act designed to interfere with the proper administration of public assistance ”. This language first appeared in our statutes in 1929 as part of the former Public Welfare Law in a section which was entitled “ Penalty for fraud; false representation and false swearing ” (L. 1929, ch. 565, § 148). In 1940, the provision was substantially re-enacted in the Social Welfare Law as section 145 which bears the simple title, “ Penalties ”. Nothing in the documents associated with the passage of the Social Welfare Law suggests that a substantive change was effected, or was intended to be effected, by such abridgment of the title. Indeed, the Legislature subsequently described section 145 as “ relating to penalties and prosecution for obtaining public assistance * * * by fraud” (L. 1954, ch. 63; see L. 1950, ch. 344) or by “ deliberate concealment of material facts ” (L. 1950, ch. 293). All of this would seem to indicate that the Legislature intended a penal sanction to attach to a “wilful act designed to interfere with the proper administration of public assistance ” only if the act were committed in furtherance of some fraudulent scheme to obtain undeserved welfare payments.
*176 It is of high significance that the provision has been consistently so interpreted by the public officials who are charged with the duty of administering the welfare law. The regulations of the Department of Social Welfare discuss criminal prosecutions under section 145 only in connection with fraud (see 18 NYCRR Part 348) and, in a 1962 Report on “ Controls and Safeguards in the Administration of Public Assistance and Care ”, the Social Welfare Board made no mention of any penal ‘ ‘ controls and safeguards ’ ’ provided by section 145 except for fraud. Nor did the 1963 Moreland Commission in its “ Report on Public Welfare in the State of New York ” give the slightest indication that a prosecution such as the one before us was viewed by it or by welfare officials as being authorized by the statute. Finally, research discloses that, in the nearly 40 years that section 145 or its predecessor has been in force, there have been no successful prosecutions except for fraud and all but one of the reported prosecutions have involved some element of fraud. (See, e.g., People v. Pellerito, 262 N. Y. 465; People v. George, 279 App. Div. 878; People v. Hurkin, 266 App. Div. 966; People v. Miller, 255 App. Div. 1026; People v. Scalise, 246 App. Div. 799.)[1]
Although the statutory language of section 145 is exceedingly broad, we believe that the Legislature meant to provide penal sanctions only for acts motivated by fraudulent intent. Since the defendant was neither charged with fraud nor was proof of fraud on his part introduced upon the trial, his conviction must be reversed and the information dismissed.
This view is strengthened by the settled canon of construction that a statute “ ‘ should be construed when possible in manner which would remove doubt .of its constitutionality.’ ” (Matter of New York Post Corp. v. Leibowitz, 2 N Y 2d 677, 687; see People v. Lo Cicero, 14 N Y 2d 374, 378.) Absent a requirement *177 that there be proof of fraudulent intent, the portion of section 145 under consideration here might well be regarded as unconstitutional on the ground of vagueness (see, e.g., Keyishian v. Board of Regents, 385 U. S. 589; People v. Caswell-Massey Co., 6 N Y 2d 497, 501; People v. Diaz, 4 N Y 2d 469; People v. Firth, 3 N Y 2d 472; People v. Grogan, 260 N. Y. 138) or because it sanctions “ involuntary servitude ” and “ peonage ”. (U. S. Const., 13th Amdt.; U. S. Code, tit. 18, § 1581, subd. [a]; see, e.g., Pollock v. Williams, 322 U. S. 4, 17-18; United States v. Gaskin, 320 U. S. 527; Taylor v. Georgia, 315 U. S. 25; United States v. Reynolds, 235 U. S. 133; Bailey v. Alabama, 219 U. S. 219.)
The judgment of conviction should be reversed and the information dismissed.
Judges Burke, Scileppi, Bergan, Keating and Bkeitbl concur; Judge Van Voorhis concurs in result upon the ground that section 145 of the Social Welfare Law is ambiguous for the reasons stated in the opinion of Chief Judge Fuld and, therefore, supplies an insufficient foundation to support a criminal charge.
Judgment reversed, etc.

. The sole exception is People v. La Fountain (21 A D 2d 719), where, during very cold weather, welfare recipients in a work-relief program (Social Welfare Law, § 164) refused to cut brush alongside a county road in exceedingly deep snow. Although they were indicted and convicted for doing a “wilful act designed to interfere with the proper administration of public assistance ”, the Appellate Division reversed the conviction and dismissed the indictment on the ground that “ no ‘ wilful ’ act within the meaning of section 145 and none, certainly, ‘ designed ’ to interfere with welfare administration ” had been proved (p. 720).