Louis Cioffi, J.
The above four writs of habeas corpus raise similar questions regarding prison disciplinary hearings and are considered together in this decision.
*961 All the relators are serving definite sentences in the New York City Correctional Institution for Men. They have all had disciplinary hearings on the ground that they allegedly violated the rules of the institution and, having been found guilty of the infraction they were accused of, had various amounts of “ good behavior time ” taken away from them by the warden. Relators allege that they have been denied due process of law in their loss of good behavior time for various reasons set forth below. A review of the pertinent sections of the law relating to good time allowances and the rights of prisoners thereunder is necessary to adequately determine and resolve the issue raised by the relators.
[Section 803 and subdivision 1 of section 804 of the Correction Law provide that every person serving an indeterminate sentence (except a person serving a maximum term of life sentence) or definite sentence may receive time allowance against the maximum term of his sentence not to exceed in the aggregate one third of the term imposed by the court (in indefinite sentences) or not to exceed in the aggregate one sixth of the term imposed by the court (in definite sentences). Subdivision 4 of sections 803 and subdivision 3 of section 804 of the Correction Law specifically provides that no person shall have the right to demand or require the allowances authorized by these sections, and the decision of the warden, superintendent or ei al. in charge of the institution granting withholding, forfeiting or restoring such allowance shall be .final and not reviewable if made in accordance with law. Subdivision 5 of section 803 of the Correction Law, provides that all such allowances granted prior to any release on parole or prior to any conditional release shall be forfeited and shall not be restored if the paroled or conditionally released person is returned to an institution under the jurisdiction of the State Department of Correctional Services for violation of parole, violation of conditional release or by reason of a conviction for a crime committed while on parole or conditional release (in all cases involving indeterminate sentences). Subdivision 4 of section 804, applicable to definite sentences provides that a person who has earned a reduction of sentence pursuant to this section and who has been conditionally released under subdivision 2 of section 70.40 of the Penal Law shall not forfeit such reduction by reason of conduct causing his return to the institution but may be forfeited by reason of subsequent conduct while serving the remainder of the term.
*962 Subdivision 4 of section 70.30 of the Penal Law provides that good time allowance earned pursuant to the provisions of the Correction Law shall be applied as a credit.
In Royster v. McGuiness (332 F. Supp. 973, 977-978) in declaring subdivision 3 of section 230 of the New York Correction Law unconstitutional stated: “If it were clear that the awarding of good time was based solely and exclusively on an inmate’s performance * * * the denial of good time for jail time might be understandable; however, this does not seem to be the case. Bather, it seems that the overriding consideration in the granting of reductions is the maintenance of prison discipline * * * Surely the state’s argument is undercut when it is realized that a prisoner is immediately and automatically credited with a maximum allowance of good time credit for future good behavior at the time his minimum parole date is initially fixed upon his arrival in state prison. In effect, then, a prisoner does not 6! earn ’ ’ good time credit as time goes on for exemplary performance in assorted prison programs but rather simply avoids being penalized for bad behavior.”
The United States Supreme Court, in McGuiness v. Royster (410 U. S. 263, 271-273) reversed Royster (supra) stating:
* ‘ As the statute and regulations contemplate state evaluation of an inmate’s progress towards rehabilitation, in awarding good time, it is reasonable not to award such time for pretrial detention in a county jail where no systematic rehabilitative programs exist and. where the prisoners’ conduct and performance are not even observed and evaluated by the responsible state prison officials * * * Where there is no evaluation by state officials and little or no rehabilitative participation for anyone to evaluate, there is rational justification for declining to give good-time credit.”
The Eegulations of the Department of Correctional Services (7 NYOBB 260.1 [a]) read as follows: “ The opportunity to earn good behavior allowances offers inmates a tangible reward for positive efforts made during incarceration.” (Emphasis added.)
This language is clear and unequivocal. It requires that an inmate earn his good behavior allowance with positive efforts made during the performance of his sentence and whether or not an effort is positive may only be determined after an evalution is made of those efforts.
An examination of sections 803 and 804 of the Correction Law and section 70.30 of the Penal Law makes it equally clear that good time allowance must be earned, and when earned, must be *963 applied as a credit. ¡Such good tinie allowance may be granted or earned, for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment program (see Correction Law, §§ 803, 804, subd. 1). Furthermore, it may be withheld, forfeited or canceled in whole or in part for bad behavior, violation of institutional rules or failure to perform properly in the duties assigned, within the discretion of the Department of Correctional Services, when exercised in accordance with law (see Correction Law, §§ 803, 804, subd. 1) and inmates do not have the right to demand or require the allowance authorized by these sections (see Correction Law, i§ 803, subd. 4; § 804, subd. 3).
It is argued that good time allowance is granted prior to the commencement of an inmate’s sentence and relators in support of this contention rely on a procedural practice of the Department of Correctional Services of entering upon an inmate’s card upon his admission to the institution a “ Tentative Expiration Date ’ ’ which is fixed by subtracting the maximum good time allowance from the maximum sentence, which entry' is made by a receiving employee of the Department of Correctional Services. This court is of the opinion that the entry made is a ministerial act and is entered solely as a guideline for the Department of Correctional Services to act within a reasonable time prior to the tentative release date to either grant or withhold good time allowance. This simple ministerial act should not be interpreted to give an inmate a full line of credit which he has not yet been given the opportunity to earn. The granting of good time allowance prior to the commencement of a sentence is not only contrary to the general tenor, import and expressed intent of the Correction Law, but is also contrary to the general scheme of things such as the payment of salaries after services are rendered or the granting of prizes and awards after achievement and accomplishment is made. An analogous situation is one where an employer employs an employee and schedules him to be paid at the conclusion of the payroll period. The employee has not been credited with salary simply because the employer entered the name of the employee together with a stipulated salary on his payroll ; nor can the employee claim the salary if he fails to perform. So too, in the case of an inmate, he may not claim that which he has not earned.
Tn summation, this court is of the opinion that the expressed and implied language and the general import and intent of sections 80S and 804 of the Correction Law and section 70.30 of *964 the Penal Law irrefutably dictate that: (1) good time allowance must be earned after an inmate has demonstrated satisfactory performance or good behavior; (2) inmates do not have the right to demand or require the allowances authorized by sections 803 and 804 of the Correction Law; and that (3) the Department of Correctional Services has the sole discretion of either granting, denying or withholding good time allowances when said discretion is exercised in accordance with the law.
However, this court further holds that section 70.30 of the Penal Law mandates that earned good time allowance shall be applied as a credit. Although section 70.30 of the Penal Law does not dictate when such good time allowance shall be applied as a credit (except that it be earned), the Department of Correctional Services may not arbitrarily or capriciously deny or withhold earned good time allowance beyond a reasonable time prior to the tentative expiration date entered on an inmate’s card. In the event the Department of Correctional Services arbitrarily or capriciously denies or withholds earned good time allowance beyond a reasonable time prior to the tentative expiration date, inmates may apply to the courts for a review and determination of their claims for earned good time allowance either through a writ of habeas corpus or an article 78 proceeding.
The procedure for the taking away of good time allowances due to bad behavior is a prison infraction hearing. Section 4.49 of the Rules and Regulations of the Department of Correction of the City of New York provides that following an alleged infraction by a prisoner, a disciplinary board convenes and a hearing is held to determine the inmate’s guilt or innocence of the infraction. After the hearing, the disciplinary board makes a “ recommendation ” as to the guilt or innocence of the prisoner on a form called the ‘ ‘ Report of Infraction. ’ ’ Such report is forwarded to the warden for the final determination. The “ Report of Infraction” contains the investigative officer’s report, the complaining officer’s report, a statement by the inmate, a brief summary of the hearing and the report and recommendation of the disciplinary board. No transcript or recording is made of the hearing.
Relators list many grounds for their claim that they have been denied due process of law. Some of the grounds have merit while others do not.
Relators allege that respondents have failed to publish rules and regulations for inmate conduct and that they did not know in advance what conduct they are prohibited from doing.
*965 It has been held that inmates are entitled to advance notice as to what acts are in fact considered by the institution to be infractions; they must be advised upon coming into the institution as to just what conduct is prohibited. Failure to promulgate rules and regulations and to make them readily and easily available to inmates clearly constitutes a denial of minimal due process. (Rhem v. McGrath, 326 F. Supp. 681; Matter of Bones v. Warden, New York City Correctional Inst, for Men, 77 Misc 2d 617.) This court concurs with these decisions insofar as they apply to violations of institutional discipline but must reject its holding when applied to the commission of a crime within institutions. The rules and regulations governing the conduct and behavior of all people within the territorial confines of the State of New York are to be found, among other places, in the Penal Laws of the State of New York.
Therefore, the basic rules and regulations of all institutions are contained in the penal law and rules and regulations of an institution can only be considered an addendum to, and never a substitute for, the provisions of the Penal Law. Furthermore, an institution cannot waive the provisions of the Penal Law knowingly or unknowingly, through commission or omission. The Penal Law gives sufficient notice to all citizens and such notice is not lost upon an individual entering a penal institution. Thus, even in the absence of all prison rules and regulations all inmates are firmly bound to obey the provisions (rules and regulations) of the Penal Law and they may not escape punishment for the commission of a crime by interposing a defense that they had not been given notice that the commission of a crime violated the disciplinary rules and regulations of the penal institution. Ignorance of the law has never been a good defense. All persons are presumed to know the law and that violations thereof may be punishable either criminally or administratively, or both. To hold otherwise would be to give prison inmates an advantage not enjoyed by all other citizens of the State and would be in violation of the equal protection clause. However, for all those infractions that do not constitute crimes (for example, using profanity towards a correction officer), notice must be given as to what conduct is prohibited.
With regard to the proceedings at the hearing, this issue has recently been determined by the United States Supreme Court in the case of Wolff v. McDonnell (418 U. S. 539). The Supreme Court held in that case that an inmate must receive written notice that he is charged with an *966 infraction at least 24 hours prior to the hearing. Furthermore, inmates should be allowed to call witnesses and present documentary evidence in their behalf when permitting them to do so will not be unduly hazardous to institutional safety or correctional goals, and “ a ‘ written statement by the factfinders as to the evidence relied on and reasons ’ for the disciplinary action [must be made] * * * Written records or proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with the possible scrutiny by state officials and the public and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly.” (Wolff, supra, p. 956).
However, Wolff also stated that there is no constitutional right of confrontation and cross-examination and no right to counsel at these disciplinary proceedings.
Having considered the questions relating to good time allbwances, the requirements of notice of rules and regulations and hearings, the court now turns its attention to the question of the timeliness of writs and article 78 proceedings.
Deprivation of good time allowance results in an extension of a sentence beyond the tentative release date entered on an inmate’s record. When an inmate is deprived of good time allowance after a hearing conducted long in advance of the tentative release date, it cannot be said that the inmate has sustained any loss at that time because, inasmuch as an inmate cannot be released prior to his tentative release date (he must serve his sentence until that date), the execution of the board’s decision cannot take effect immediately but must be held in abeyance until the tentative release date. Logically, therefore, the deprivation is no deprivation at all at that time, because no extension to an inmate’s minimal sentence ■ has occurred. Therefore, any writ or article 78 proceeding brought too soon before the tentative release date is premature and should be summarily denied with leave to renew the writ or article 78 proceeding at an appropriate date within a reasonable time prior to the tentative release date.
The court now turns its attention to the facts of the cases before it and to consider the application, to these cases, of the principles hereinabove discussed.
1. People ex rel. Bright v. Warden of New York City Correctional Inst, for Men. Relator was charged with having *967 committed infractions of prison rules on six separate occasions and has been given six disciplinary hearings. The first infraction was for “causing a disturbance in the mess hall” and relator lost three days good time. The second infraction was for “attempted escape ” and “cursing an officer” and relator lost 10 days good time. The third infraction was for ‘1 refusing to yield those items of personal property not allowed in 3-U Punitive Segregation and using loud, abusive and threatening language to captain and officer ” and relator lost 10 days good time. The fourth infraction was for “throwing water into corridor and displaying fire in his hand from cell” and relator lost five days good time. The fifth infraction charges relator with “inciting a riot and causing a disturbance to other inmates ’ ’ and relator lost five days good time. The sixth infraction was for ‘ ‘ refusing a direct order, disrespect to an officer and disobeying institutional rule #6 ’ ’ and relator lost two days good time. (Bright v. Warden.) Writ is denied. The court finds that adequate notice was given the relator. Furthermore, ‘ ‘ inciting to riot ’ ’ and ‘ ‘ attempted escape ” are violations of the Penal Law and relator is presumed to have knowledge and notice that they constitute infractions of prison discipline. In passing, it might also be observed that relator’s conduct has been erratic and inconsistent and it is inconceivable that the Legislature ever intended to reward inconsistent and erratic behavior.
2. People ex rel. Williams v. Warden of New York City Correctional Inst, for Men. On three separate occasions, relator was charged with having committed infractions of prison rules and had three separate disciplinary hearings. The first infraction was for ‘ ‘ disturbance in clinic, use of profanity and threatening an officer ’ ’ and relator lost three days good time. The second infraction was for “ refusing to work, refusing a direct order and cursing an officer” and relator lost five days good time. The third infraction was for “ attempted fight in dorm ” and relator lost five days good time. The court denies the writ on the grounds that it is premature with leave to relator to renew his writ at an appropriate time within a reasonable time of the tentative release date.
3. People ex rel. Figueroa v. Warden of New York City Correctional Inst, for Men. Relator was charged with an assault on another inmate, and relator lost 20 days good time. The court dismisses the writ. Assault is a crime punishable under the Penal Law, and relator is not entitled to advance notice that he cannot assault other inmates.
*968 4. People ex rel. Alston v. Warden of New York City Correctional Inst, for Men. Relator was charged with “inciting inmates to organize disturbance ” and lost five days good time after the hearing. The court dismisses the writ on the grounds that inciting to riot is a crime and the fact that the relator had no advance notice that the alleged act constituted a violation of institutional rules for which good time can be taken away is without merit. He is presumed to have knowledge of the Penal Law and therefore, notice that the commission of a crime constitutes an infraction of prison rules and regulations.
Therefore, the writs are disposed of, as indicated above.