■ In the Matter of ROBERT AMATO, Appellant, v BENJAMIN WARD, as Commissioner of New York State Department of Correctional Services, et al., Respondents.—In a proceeding pursuant to CPLR article 78, by an inmate of the Green Haven Correctional Facility, *inter alia,* to review respondents' determination that petitioner lose six months of good behavior time, the appeal is from a judgment of the Supreme Court, Dutchess County, dated November 20, 1975, which dismissed the petition. Judgment affirmed, without costs or disbursements. The time allowance committee does not adjudicate specific disciplinary violations, nor does it exact punishment. Its function is to evaluate the entire disciplinary record of an inmate and to make a recommendation of the amount of good behavior time to be granted (7 NYCRR 260.3 [b], 261.3 [d]). Such action does not require the procedures of an adversary proceeding (cf. *Wolff v McDonnell,* 418 US 539). Further, under the circumstances here presented, class action relief is unnecessary (see *Matter of Jones v Berman,* 37 NY2d 42, 57). Martuscello, Latham and Hawkins, JJ., concur; Shapiro, J., concurs insofar as the majority has affirmed the dismissal of that part of the petition which sought class action status, but otherwise dissents and votes to (1) modify the judgment by deleting therefrom the provision which dismissed the petition insofar as it sought to review the determination and (2) remit the matter to

respondents for further proceedings in accordance with the following memorandum, in which Hopkins, Acting P. J., concurs: I do not believe that the petitioner received those procedural due process rights to which he was entitled. I therefore dissent. The major issue on this appeal is whether the procedures established for the granting of good behavior allowances in 7 NYCRR Part 261 are in accord with the requirements of the due process clause of the Fourteenth Amendment to the Constitution of the United States. Part 261 provides for the establishment of a time allowance committee, consisting of employees of the Department of Correctional Services, whose purpose "shall be to make recommendations as to the amount of good behavior allowance to be granted to inmates who are eligible to be considered for such allowance" (§ 261.2). Section 261.3 establishes the procedure of time allowance committees. It provides that the file of each inmate who is serving an indeterminate sentence, as is the petitioner herein, and who is entitled to be considered for good behavior allowance, must be considered at least once in three years by the time allowance committee and, in addition, must be considered not more than three years nor less than two months before the earliest possible date he would be entitled to consideration for parole or conditional or other release if that date depends upon the amount of good behavior allowance to be granted. It also provides: "(d) The committee shall consider the entire file of the inmate and shall interview the inmate and then shall decide upon a recommendation as to the amount of good behavior allowance to be granted, applying the principles set forth in sections 260.3 and 260.4 of this Part. (e) The committee shall not recommend the granting of the total allowance authorized by law or the withholding of any part of the allowance in accordance with any automatic rule, but shall appraise the entire institutional experience of the inmate and make its own determination. (f) The committee shall promptly report the results of its deliberations in writing to the superintendent. Such report shall set forth its recommendation for the time to be allowed for the period under consideration and the reasons for the recommendation." The foregoing regulations were adopted pursuant to subdivision 3 of section 803 of the Correction Law. Section 803 deals with good behavior allowances against indeterminate sentences. It provides: "1. Every person confined in an institution of the department serving an indeterminate or reformatory sentence of imprisonment, except a person serving a sentence with a maximum term of life imprisonment, may receive time allowance against the maximum term * * * of his sentence not to exceed in the aggregate one-third of the term * * * imposed by the court. Such allowances may be granted for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment program, and may be withheld, forfeited or canceled in whole or in part for bad behavior, violation of institutional rules or failure to perform properly in the duties or program assigned. * * * 3. The commissioner of correction shall promulgate rules and regulations for the granting, withholding, forfeiture, cancellation and restoration of allowances authorized by this section in accordance with the criteria herein specified. Such rules and regulations shall include provisions designating the person or committee in each correctional institution delegated to make discretionary determinations with respect to the allowances, the books and records to be kept, and a procedure for review of the institutional determinations by the commissioner. 4. No person shall have the right to demand or require the allowances authorized by this section. The decision of the commissioner of correction as to the granting, withholding, forfeiture, cancellation or restoration of such allowances shall

be final and shall not be reviewable if made in accordance with law." Section 260.2 of title 7 of the New York Codes, Rules and Regulations provides: "Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him." Subdivision 4 of section 70.30 of the Penal Law also relates to good behavior time. It provides, in relevant part: "Good behavior time. Time allowances earned for good behavior, pursuant to the provisions of the correction law, shall be computed and applied as follows: (a) In the case of a person serving an indeterminate sentence, the total of such allowances shall not exceed one-third of his * * * maximum term and the allowances shall be applied as provided in subdivision one (b) of section 70.40". It is undisputed that the practice of the Department of Correctional Services is to credit an inmate with the maximum allowance of good behavior time credit when he is received in the correctional facility. This is of crucial importance. The court in *McGinnis v Royster* (410 US 263) spoke of the manner of administration of the provisions of former section 230 of the Correction Law, the statutory scheme of which was replaced by sections 803 and 805 of the Correction Law in 1967 (L 1967, ch 680, § 147) and which, like section 803, provided that the good time allowance "may" be received and that nothing in the statute should be construed to confer on any prisoner any right to demand or require the whole or any part of such allowance. The court said (p 276, n 25): "The court below noted that the disciplinary purpose of the statute is demonstrated by the fact that 'a prisoner is immediately and automatically credited with a maximum allowance of good time credit for *future* good behavior at the time his minimum parole date is initially fixed upon his arrival in state prison. In effect, then, a prisoner does not "earn" good time credit as time goes on for exemplary performance in assorted prison programs but rather simply avoids being penalized for bad behavior' " (emphasis in original). When petitioner was confined to the Green Haven Correctional Facility pursuant to a judgment of the Supreme Court, New York County, convicting him of manslaughter in the second degree and sentencing him to a maximum term of 10 years, his conditional release eligibility date was calculated to be November 25, 1975. In accordance with section 803 of the Correction Law and 7 NYCRR Parts 260, 261, the petitioner appeared before the Green Haven Correctional Facility's time allowance committee on October 1, 1975. The committee reduced the maximum good time credit allowable to the petitioner from three years and four months, one third of the 10 year maximum sentence imposed, to two years and eight months. In its report the committee gave as its reason: "Extremely poor institutional record." It added that petitioner was "to reappear at a December 1975 Time Allowance Committee for review." The "Good Behavior Allowance Report" dated October 7, 1975, shows the petitioner's "New Parole or CR Eligibility Date" to be April 25, 1976. The record of disciplinary actions taken against petitioner during his period of incarceration shows that superintendent's proceedings were held on charges against him on July 6, 1973 for reports of misconduct by petitioner on June 26, 1973 and that one of the punishments assessed against him on that occasion was the loss of 60 days of good time. Under 7 NYCRR 261.3 (g), the time allowance committee, at its October consideration of the good behavior allowance to be given to the petitioner, denied him restoration of those 60 days and imposed an additional loss of six months of good time. Petitioner's article 78 petition does not seek revocation of the 60-day loss of good time, but is limited to an attack on the deprivation of six months of good time credit imposed on him

by the time allowance committee. The only specific requirements established by subdivision (d) of section 261.3 for procedures to be followed by the time allowance committee in deciding upon a recommendation as to the amount of good behavior allowance to be granted are, first, that it shall apply "the principles set forth in sections 260.3 and 260.4" of the same part of the regulations. Section 260.3 provides: "Criteria for allowances. (a) All recommendations and decisions must be made through completely impersonal, impartial and fair and reasonable evaluations. (b) In evaluating the amount of allowance to be granted, the statutory criteria (i.e., good behavior, efficient and willing performance of duties assigned, progress and achievement in an assigned treatment program) shall be viewed in the light of the following factors: (1) The attitude of the inmate; (2) The capacity of the inmate; and (3) The efforts by the inmate within the limits of his capacity." Section 260.4, which deals with forfeits and disallowances, provides, in relevant part: "(b) A disposition involving loss of a specified period of good behavior allowance made in a superintendent's proceeding under Part 253 of Subchapter A of this Chapter shall be deemed to be tentative until such time as it actually affects consideration for parole or for conditional or other release and shall then either be confirmed or be modified by the commissioner". A second requirement is that the committee not use any automatic rule in recommending that the allowance be withheld, but that it appraise the entire institutional experience of the inmate and make its own determination. A third requirement is that the committee consider the entire file of the inmate. A fourth requirement is that the committee interview the inmate before deciding upon a recommendation as to the amount of good behavior allowance to be granted. A fifth requirement is that the committee report the results of its deliberations promptly to the superintendent, in writing, and that it set forth in its report both its recommendation and the reasons therefor. The last requirement is that where the committee has recommended an allowance which will extend the period of incarceration beyond the earliest, or any previously established, release date, the inmate be scheduled to reappear before another time allowance committee in accordance with the direction of the commissioner. Petitioner, in his brief, concedes that he was interviewed by the committee before it decided on its recommendation and that, on December 18, 1975, he was served with a "Good Behavior Allowance Report" dated December 16, 1975. That report stated that on December 2, 1975 consideration was given to his eligibility for conditional release and that a new parole or conditional release eligibility date of July 25, 1976 was established by the Deputy Superintendent. The propriety of that ruling is not here under review, since the instant proceeding was initiated prior thereto and the petition has not been amended to include an attack on the December 16 "Good Behavior Allowance Report." Petitioner contends that the procedure authorized in 7 NYCRR 261.3 violates the due process clause of the Fourteenth Amendment by allowing a prisoner to be deprived of liberty without the minimal due process protections applicable to such proceedings. I agree. In *Wolff v McDonnell* (418 US 539)[1] a prisoner in a Nebraska prison sought injunctive relief and damages

---

1. On April 20, 1976 the Supreme Court of the United States handed down an opinion in *Baxter v Palmigiano* (425 US 308), in which it considered the "reach of our recent decision in *Wolff v McDonnell*", reaffirmed the due process procedural views therein expressed and rejected lower court holdings which would have extended those procedural rights to guarantee inmates involved in such proceedings a right to counsel. It also held that prison authorities could draw an adverse

under section 1983 of title 42 of the United States Code on the ground that disciplinary proceedings at the prison violated due process. The Nebraska statutes (Neb Rev Stat [Cum Supp 1972], § 83-1, 107) declare in part: "(1) The chief executive officer of a facility shall reduce, for parole purposes, for good behavior and faithful performance of duties while confined in a facility the term of a committed offender as follows". Subdivision (2) of that section also provides, *inter alia,* that "Reductions of such terms may be forfeited, withheld and restored by the chief executive officer of the facility after the offender has been consulted regarding the charges of misconduct." A third subdivision states: "(3) Good time or other reductions of sentence granted under the provisions of any law prior to July 6, 1972 may be forfeited, withheld, or restored in accordance with the terms of this act." Mr. Justice White, who delivered the opinion of the court in *Wolff,* noted that the only provision in the Nebraska statute establishing procedures for the forfeiture, withholding or restoration of good time merely required that the inmate affected be "consulted regarding the charges of misconduct." He also noted that the prison authorities framed written regulations dealing with procedures and policies for controlling inmate misconduct, in which an adjustment committee composed of prison officials was established, and that it was authorized to review and evaluate all misconduct reports, conduct investigations, make findings and impose disciplinary actions. Among the sanctions which could be invoked as disciplinary action was the withholding of statutory good time. Mr. Justice White found that the procedures established in the Nebraska prison for dealing with charges of prison violations by inmates involved (1) calling the inmate to a conference with the chief correction supervisor and the charging party, (2) preparing a report thereafter which is sent to the adjustment committee and (3) holding a hearing before the adjustment committee in which the report is read to the inmate and discussed. If the inmate denies the charge he may question the party writing him up. The adjustment committee can conduct additional investigations, if it so desires, and a punishment is imposed. Rejecting the State's assertion that the interest of prisoners in disciplinary proceedings is not included in the "liberty" which is protected by the Fourteenth Amendment, Mr. Justice White said (pp 557–558): "It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison. But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior. Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing 'in every conceivable case of government impairment of private interest.' *Cafeteria Workers v McElroy,* 367 U. S. 886, 894 (1961). But the State having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct, the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated. * * * We think a person's liberty is equally protected, even when the liberty itself is a statutory creation of the State. The touchstone of due process is protection

---

inference from the fact that an inmate who was the subject of such disciplinary proceedings elected to remain silent after being advised of the proof against him. That decision in no way affects my reliance on *Wolff* in the instant case.

of the individual against arbitrary action of government, *Dent v West Virginia,* 129 U. S. 114, 123 (1889). Since prisoners in Nebraska can only lose good-time credits if they are guilty of serious misconduct, the determination of whether such behavior has occurred becomes critical and the minimum requirements of procedural due process appropriate for the circumstances must be observed." Conceding, however, "that one cannot automatically apply procedural rules [of due process] designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison" (p 560), Mr. Justice White held that if the minimum requirements of procedural due process are to be satisfied the complaining prisoner must be given (1) "advance written notice of the claimed violation", (2) "a written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken" (p 563), (3) "At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee" (p 564) and (4) permission "to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals" (p 566). Since section 803 of the Correction Law, as interpreted by the Department of Correctional Services, immediately and automatically credits each inmate with a maximum allowance of good time credit for future good behavior at the time his minimum parole date is fixed (this is done upon his arrival in State prison), the right to good time is thus, in effect, *a statutory right.* Similarly the language of 7 NYCRR 261.3, discussed above, establishing the procedure to be used by time allowance committees in reaching recommendations as to the granting of the total allowance authorized by law or the withholding of any part thereof, demonstrates that the State has recognized that "its deprivation is a sanction" authorized for misconduct. It follows, therefore, that here, as in *Wolff,* "the prisoner's interest has real substance and is sufficiently embraced within the Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated" (p 557). The respondents dispute the validity of the foregoing conclusion because subdivision 4 of section 803 declares that "No person shall have the right to demand or require the allowances authorized by this section", and 7 NYCRR 260.2 declares that "Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him." In support respondents cite *Handlin v Flood* (35 NY2d 883), in which the Court of Appeals affirmed, without opinion, a decision we handed down in December, 1973 (43 AD2d 738), some six months prior to the holding in *Wolff.* This court affirmed, without opinion, a judgment of the Supreme Court which dismissed an article 78 petition by an inmate of the Nassau County Jail which sought to review a determination of the warden that the inmate should lose seven days of "good time credit". I dissented, stating: "In my opinion, respondent's determination, *without a hearing,* to deprive petitioner of seven days of 'good time' jail credit for failure to have his hair cut, is an undue curtailment of petitioner's civil rights, particularly since petitioner infers that his religion requires that his hair be uncut." (Emphasis supplied.) *Handlin* dealt with good behavior allowances for a prisoner serving a definite term, which is governed by section 804 of the Correction Law. Subdivision 5 of that section, unlike section 803, provides only that "The state commission of correction

shall promulgate *record keeping* rules and regulations for the granting, withholding, forfeiture, cancellation and restoration of allowances authorized by this section"; subdivision 3 of section 803, with which we are here dealing, provides that the "commissioner of correction shall promulgate rules and regulations for the granting, withholding, forfeiture, cancellation and restoration of allowances authorized by this section *in accordance with the criteria herein specified*". It goes on to specify that those designated to make determinations in accordance with the rules and regulations are empowered *"to make discretionary determinations with respect to the allowances"*.[2] (Emphases supplied.) But even if the foregoing difference were not sufficient ground for distinguishing *Handlin v Flood (supra)*, it is clear that a State may not avoid the requirements of due process by labeling an action, such as the loss of good time, as a privilege rather than a right (see *Geraci v Treuchtlinger,* US Dist Ct, EDNY, Index No. 73C-254, March 20, 1973, Bartels, J.). Yet that is apparently what the Legislature was seeking to achieve when it provided in subdivision 4 of section 803 of the Correction Law that "No person shall have the right to demand or require the allowances authorized by this section", and what the Commissioner of Correction was seeking to establish when he declared in 7 NYCRR 260.2 "Good behavior allowances are in the nature of a privilege to be earned by the inmate and no inmate has the right to demand or to require that any good behavior allowance be granted to him." Neither the Legislature nor the commissioner could thus cavalierly abolish the constitutionally guaranteed right to procedural due process accruing to an inmate in a State prison in connection with State-created rights to good behavior time, as those rights have been interpreted by the United States Supreme Court. Respondents attempt to distinguish *Wolff* on the ground that "the procedures required therein were fashioned to deal with the situation where good time credit, credit which an inmate was entitled to as of right under Nebraska law, was taken away from an inmate", whereas "under New York law there exists no statutory right to good behavior time". In support of this contention respondents point to the provisions of subdivision 4 of section 803 of the Correction Law. But subdivision 1 of that section clearly establishes the grant of good behavior allowances against indeterminate sentences. Even though that section provides that "such allowances *may* be granted for good behavior and efficient and willing performance of duties assigned or progress and achievement in an assigned treatment program," it goes on to state that such allowances *"may* be withheld, forfeited or cancelled in whole or in part for bad behavior, violation of institutional rules or failure to perform

---

2. In *Foote v Flood* (44 AD2d 566), decided on March 11, 1974, this court reached the same conclusion as it did in *Handlin,* without citation or discussion of *Wolff.* It followed *Handlin* though it did not cite it. Like *Handlin,* it dealt with a petitioner who was objecting to the loss of five days of good time credit from the one-year sentence she was serving in the Nassau County Jail. We said there: "Before petitioner was deprived of five days' jail time, an inquiry was conducted by the prison officials at which (1) the nature of her offense was explained to her, (2) she was informed of the evidence against her and (3) she was offered a reasonable opportunity to explain her activities. That is all that due process requires *(Sostre v. McGinnis,* 442 F. 2d 178, 198, 203)." It is not clear from the foregoing that the procedure used there was not in compliance with the due process procedural requirements spelled out in *Wolff.* Furthermore, her good behavior time rights created under section 804 of the Correction Law, as has been noted above, differ substantially from those created by section 803.

properly in the duties or program assigned" (emphases supplied). When these two apparently permissive statements are read together, it becomes clear that their intent and purpose is the same as that of the Nebraska good time statute—the maintenance of prison discipline. The difference in language between the Nebraska statute, which declares that the "chief executive officer of a facility shall reduce, for parole purposes, for good behavior and faithful performance of duties while confined in a facility the term of a committed offender", and the New York statute, which uses permissive rather than mandatory language, is in terms of which form of language will be most likely to achieve the goal sought, maintenance of prison discipline by inmates. Apparently the New York State Legislature believed that the goal would be more likely to be achieved if the statute stressed the *tentative nature of the good time allowance* and the possibility of forfeiture of all or part of the allowance in case of failure to comply with institutional rules, while the Nebraska Legislature believed the likelihood of success in maintenance of discipline was better if the attainment of good time was specifically declared to be a right which was nevertheless subject to forfeiture for misconduct. In any case, in interpreting their respective statutes, the prison authorities of both States treated good time credit similarly. Each set up a parole eligibility date when the prisoner entered their facilities on the assumption that he would receive the full good time credit provided by the statute, and each established machinery which had as its purpose, not the awarding of good time credit earned, but solely the withholding of part or all of such good time credit if the inmate engaged in conduct deemed violative of institutional rules. However, just as a State may not infringe upon or eliminate an inmate's constitutionally guaranteed rights to limited procedural due process, by designating such rights as privileges, it may not achieve the same goal by using permissive rather than mandatory language in framing its granting of those rights.[3] In my opinion the petitioner here

---

3. Several nisi prius courts in this State have ruled on this question in a manner contrary to the conclusion we here reach *(People ex rel. Bright v Warden of N. Y. C. Correctional Inst. for Men,* 79 Misc 2d 959, 962–964; *Bradley v Ward,* 81 Misc 2d 713, 716; *Matter of Lee v Vincent,* Sup Ct, Dutchess County, Sept 17, 1975, Rubenfeld, J.; *People ex rel. Latimer v Warne,* Sup Ct, Westchester County, Index No. 11832/75, Aug 29, 1974, Sullivan, J.). In *Bright* the court dealt with *Wolff* only insofar as it dealt with what specific due process rights prison inmates were entitled to, not with the effect it might have on the constitutionality of a State's effort to allow good time credit while keeping it as a privilege and not a right. In *Bradley v Ward,* the court erroneously distinguished *Wolff* on the ground that the statute there "gave the prisoner a *right* to good time credit" while "under New York law, there is no statutory right to good behavior time" (p 716). In *Matter of Lee v Vincent* the court distinguished *Wolff* on the ground that the function of the time allowance committee is not disciplinary in nature. I do not agree since both the statute and the regulations issued thereunder (7 NYCRR 253.1) make it clear that the major purpose of providing good time allowances is the maintenance of prison discipline. In *People ex rel. Latimer v Warne,* the court rested its decision on the permissive language of the statute. In several instances nisi prius courts have taken a contrary view. In *Matter of Bones v Warden, N. Y. C. Correctional Inst. for Men* (77 Misc 2d 617, 619), the court said: "Minimum standards of due process apply to a prisoner in a case of forfeiture of good time." Earlier, in *Lewis v Flood* (78 Misc 2d 994, 996), the court said: "Nothing herein is intended to challenge the rights of custodial officers to forfeit good time credit within their discretion and for cause (see Correction Law, §§ 803, 804). But where cause is asserted, as it has been here, [and must be under the

was entitled to, but did not receive, the limited due process rights established in *Wolff* for persons involved in hearings as to the withholding from them of good time credit allowances established under section 803 of the Correction Law, because the regulations governing the procedures of time adjustment committees are defective in the following respects: (1) they fail to secure to inmates coming before them advance written notice of the claimed violation or violations which led to their case being referred to the time adjustment committee for possible withdrawal of all or part of the good behavior time originally credited to them; (2) they fail to require the time adjustment committee to include in its written report to the superintendent, required by 7 NYCRR 261.3 (f), a statement of the fact-finders as to the evidence relied upon and the reasons for the disciplinary action recommended; (3) they fail to require that the inmate be given a brief period of time, no less than 24 hours, to prepare for the appearance before the time allowance committee; and (4) finally, the regulations fail to grant the inmate called before the committee permission to call witnesses and present documentary evidence in his defense, when granting the inmate this right will not be unduly hazardous to institutional safety or correctional goals. Hence, the regulations did not grant and, so far as the record indicates, the petitioner did not receive any of these procedural due process rights.[4] The petitioner is therefore clearly entitled to the first three procedural rights set forth above, (a) advance written notice of the claimed violation or violations which have led to his being given a time allowance committee hearing for possible loss of part or all of his good behavior time, (b) the inclusion by the time allowance committee, in its written report to the superintendent, of a

---

applicable regulations in the case of prisoners serving indeterminate sentences] to justify the forfeiture of all or any part of good time credit, judicial review is available to determine whether there has been such an abuse of discretion as to mandate judicial intervention. And that review is only possible if the minimum standards above set forth are applied." The court set forth those standards as "adequate written notice of the charges against him", "a fair opportunity to explain his version of the incident", "the factual determination must be made by a person * * * other than the complaining officer" and "there must be an opportunity to request that other witnesses be called or interviewed" (p 995). In *People ex rel. Bradley v Casscles* (82 Misc 2d 240) the court held that the hearings of the time allowance committee and the adjustment committee held at a Department of Correctional Services facility for a disciplinary action came within the purview of *Wolff,* saying (p 241): "It does appear from the results of the committee's meetings they were all definitely disciplinary, particularly if we look at the punishment. The courts have held that any classification which imposes a substantial adverse change in the conditions of confinement because of specific prior conduct is disciplinary and subject to minimum standards of due process imposed by [the *Wolff* case]."

4. In holding that these regulations are unconstitutional I do not hold that to be true of the statute upon which they are based. Nothing in the language of the statute specifically bars the granting of the minimal due process rights to which inmates of our correctional facilities are entitled under *Wolff* and "we are also obliged to construe statutes so as to avoid constitutional doubts" *(People v Lo Cicero,* 14 NY2d 374, 378; *Lederman v Board of Educ.,* 301 NY 476, affd *sub nom. Adler v Board of Educ.,* 342 US 485, 496; *Long Is. Trust Co. v Porta Aluminum Corp.,* 44 AD2d 118, 123). We may, if it becomes necessary to do so to maintain the constitutionality of a statute, read into it any requirements normally necessary to sustain its constitutional validity *(People v Pickett,* 19 NY2d 170, 176; *Matter of New York Post Corp. v Leibowitz,* 2 NY2d 677, 687).

statement of its fact-findings and the evidence relied upon by it and (c) the giving to the petitioner of at least 24 hours between his receipt of the notice of the hearing and the holding of the hearing, to enable him to prepare for his appearance before the committee. In addition, unless the committee specifically finds and declares that granting the petitioner an opportunity to call witnesses and present documentary evidence in his defense would be unduly hazardous to institutional safety or correctional goals, it must advise the petitioner that he has that right and must place at his disposal the necessary means to exercise that right. The judgment appealed from should therefore be modified in accordance with the views above expressed.[5]

5. In this case the time allowance committee's report stated its reasons for its recommendation, as the regulation requires, but there was no statement of fact-findings setting forth the evidence relied upon.